

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────────

STEPHANIE LEE FREEMAN,

                            Plaintiff,     19-CV-00068
v.                                       DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.
───────────────────────────────────────

## INTRODUCTION

Plaintiff Stephanie Lee Freeman brought this action pursuant to Title XVI of the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for supplemental security income ("SSI"). ECF No. 1. Presently before the Court are the parties' competing motions for judgment on the pleadings. ECF Nos. 11, 19. For the reasons that follow, Plaintiff's motion for judgment on the pleadings is GRANTED, the Commissioner's motion is DENIED, and the matter is REMANDED for further administrative proceedings consistent with this Decision and Order.

## BACKGROUND

On June 23, 2015, Plaintiff filed an application for SSI alleging disability beginning on May 1, 2015. Administrative Records ("Tr.") at 203; ECF No. 5. After the application was denied, Plaintiff timely requested a hearing. *Id.* at 123-25.

On December 15, 2017, Plaintiff appeared with her attorney, Jonathan Edmin, Esq., and testified at a hearing before Administrative Law Judge, Gregory Hamel ("the ALJ"). Tr. at 33-73. A Vocational Expert ("VE"), James Soldner, also testified at the hearing. Tr. at 64-71. The ALJ issued an unfavorable decision on February 26, 2018. Tr. at 12-27. Plaintiff then timely requested

review by the Appeals Council, which the Council denied on November 17, 2018, making the ALJ's decision the final decision of the Commissioner. Tr. at 1-5. Plaintiff subsequently filed this lawsuit.

## LEGAL STANDARD

### I. District Court Review

The scope of this Court's review of the ALJ's decision denying benefits to Plaintiff is limited. It is not the function of the Court to determine *de novo* whether Plaintiff is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, so long as a review of the administrative record confirms that "there is substantial evidence supporting the Commissioner's decision," and "the Commissioner applied the correct legal standard," the Commissioner's determination should not be disturbed. *Acierno v. Barnhart*, 475 F.3d 77, 80-81 (2d Cir. 2007), *cert. denied*, 551 U.S. 1132 (2007). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brault*, 683 F.3d at 447-48 (internal citation and quotation marks omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination

2

of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.  The ALJ's Decision

At step one of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of June 23, 2015. Tr. at 17. At step two, the ALJ found that Plaintiff suffered from several severe impairments: gastroesophageal disorder, irritable bowel syndrome post-hernia repair, obesity, migraine headaches, bipolar disorder, and attention deficit hyperactivity disorder ("ADHD"). Tr. at 18. At step three of the analysis, the ALJ found the severity of Plaintiff's impairments did not meet or equal the criteria of any listing. Tr. at 18-20. The ALJ then determined that Plaintiff retained the RFC to perform light work. Tr. at 20. Specifically, the ALJ found that Plaintiff cannot climb ladders and can only occasionally climb stairs, balance, stoop, kneel, crouch, and crawl. *Id.* He also determined that Plaintiff could do routine, repetitive tasks that do not include public contact and only occasional interactions with co-workers. *Id.* At step four, the ALJ found that Plaintiff was unable to perform her past relevant work. Tr. at 25. The ALJ then proceeded to step five, where he determined that there were jobs in the national economy that a person of Plaintiff's age, education and work experience could perform. Tr. at 26. Specifically, the ALJ found that Plaintiff could work as a marker, fruit distributor, or plastics hospital products assembler. *Id.*

### II.  **Analysis**

#### A.  Relevant Medical Records

Plaintiff visited Horizon Health Services ("Horizon") for mental health treatment from February 2014 to August 2017. Tr. at 450-585. Even though Plaintiff reported feeling mostly stable on her medications, the treatment notes of Elizabeth Ostrom, NP ("NP Ostrom"), revealed that Plaintiff reported fluctuations of her moods and explosive irritability. Tr. at 509-14. Plaintiff often

4

reported experiencing depression and hypomania[1] in addition to extreme depression where she had little concern for her own life. Tr. at 492. Plaintiff's medications were adjusted repeatedly by NP Ostrom to treat Plaintiff's diagnosis of bipolar, ADHD, and anxiety, because Plaintiff reported that her medications were losing effectiveness and when she was still experiencing frequent symptoms of her disorders. Tr. at 493, 499, 510. After several medications failed to treat Plaintiff's symptoms, she was prescribed Latuda[2]. Tr. at 43, 510. Plaintiff told NP Ostrom that she was always anxious and that her panic attacks led to her having spotty vision, racing thoughts, heart palpitations, and needing to sit down and throw up. Tr. at 453, 585.

While undergoing treatment at Horizon, Plaintiff reported she had lost her job at Target because she was fired for calling out too many times when she was too depressed to go into work. Tr. at 577. Plaintiff also reported that her moods strained her household relationships and that her anxiety made it difficult to interact with others because her anxiety led to aggression. Tr. at 573. When Plaintiff went off her medication, she reported having a manic episode where she experienced dissociation and beat herself in the bathroom. *Id.* At that time, she went three days without sleep. *Id.*

On March 30, 2015, Plaintiff was hospitalized at the Niagara Falls Medical Center Emergency Department for a suicide attempt. Tr. at 385. Plaintiff overdosed on her prescription drug, Imitrex. *Id.* The mental status examination performed by Dr. Hak Ko and a psychiatry nurse noted that Plaintiff had poor insight and judgement. Tr. at 385-86. Plaintiff reported that she took

---

[1] Hypomania is a state of mood elevated above normal and usually comes with symptoms such as grandiosity, decreased need for sleep, racing thoughts, distractibility, agitation, excessive participation in harmful, but pleasurable activities, and other symptoms. Harvard Medical School, *Harvard Mental Health Letter*, Ask the doctor: What is hypomania?, https://www.health.harvard.edu/staying-healthy/what-is-hypomania (last updated June 19, 2019).
[2] Latuda is used to treat mood disorders such as schizophrenia and depression associated with bipolar disorder. WebMD, *Drugs & Medications*, Latuda, https://www.webmd.com/drugs/2/drug-155134/latuda-oral/details (last visited June 24, 2020).

the pills because she got into an argument with her husband and wanted his attention. Tr. at 383, 385-86.

On September 22, 2015, Plaintiff underwent a psychiatric evaluation performed by Dr. Kristina Luna, Psy. D. ("Dr. Luna"). Tr. at 444. Plaintiff told Dr. Luna that her depressive episodes included symptoms such as crying spells, dysphoric mood, hopelessness, and irritability. *Id.* Similar to her depression, Plaintiff's manic episodes began in adolescence, and typically included such symptoms as heart palpations, paranoid ideation, trembling, derealization, and chest pain. Tr. at 445. In her medical source statement, Dr. Luna opined that Plaintiff was moderately limited in her ability to make appropriate decisions and deal with stress. Tr. at 447. Additionally, Dr. Luna diagnosed Plaintiff with ADHD, bipolar type I disorder[3], and panic disorder, and recommended that she continue with psychological and psychiatric treatment. *Id.*

B. <u>Duty to Develop the Record</u>

Plaintiff argues remand is necessary because the ALJ failed his duty to develop the administrative record. ECF No. 11, at 12. Specifically, Plaintiff argues that the record contains a gap in treatment notes from Horizon from July 7, 2015 until February 26, 2018, when the ALJ issued his decision. *Id.* at 14. Plaintiff asserts the missing treatment notes would reveal the frequent ups and downs of her symptoms caused by her bipolar disorder. ECF No. 20, at 6. Commissioner maintains that the record was developed properly by the ALJ and, as such, contained sufficient evidence for the ALJ to determine Plaintiff was not disabled. ECF No. 19, at 15-16.

An ALJ has an affirmative duty to develop the administrative record because a disability benefits hearing is a non-adversarial proceeding. *See Perez v. Chater*, 77 F.3d 41, 47 (2d Cir.

---

[3] There are two types of bipolar disorder: type I and type II. People with type I disorder have had at least one manic episode with a major depressive episode. Mania may trigger a break from reality. Mayo Clinic, *Diseases & Conditions*, Bipolar Disorder, https://www.mayoclinic.org/diseases-conditions/bipolar-disorder/symptoms-causes/syc-20355955 (last visited June 24, 2020).

6

1996). "The duty to develop the record is particularly important where an applicant alleges he is suffering from a mental illness, due to the difficulty in determining whether these individuals will be able to adapt to the demands or 'stress' of the workplace." *Rizzo v. Berryhill*, No. 16 Civ. 4898 (CS) (PED), 2017 WL 3578701, at *16 (S.D.N.Y. Aug. 17, 2017) (internal citations omitted). In its attempts to secure a fully-developed record, the ALJ must "make every reasonable effort to help [a claimant] get medical reports from [their] own medical sources." *See* 20 C.F.R. §§ 404.1512(d), 416.912(b). Remand is warranted where the ALJ has failed to develop the record. *See Atkinson v. Barnhart*, 87 Fed. App'x 766, 768 (2d Cir. 2004) (internal citations and quotations omitted). However, the ALJ is under no obligation to further develop the record where there are no obvious gaps in the record and a complete medical history exists. *See Rosa*, 168 F.3d at 79.

The record before this Court contains medical records from Plaintiff's visits to Horizon that indicate Plaintiff attended her medication management visits with NP Ostrom from July 2015 and through August 2017. Tr. at 573-85. However, Plaintiff testified at her hearing that she was also in mental health therapy attending individual sessions with her therapist every other week in addition to attending her monthly medication management visits with NP Ostrom. *Id.* at 53. Despite the scheduled regularity of Plaintiff's mental health therapy sessions, there were no treatment notes from those sessions in the record.

Therefore, the Court agrees that the absence of the notes from Plaintiff's individual therapy sessions created an obvious gap in the medical record. Because a complete medical record includes treatment notes from mental health professionals the claimant had "the most frequent and sustained contact with," *Rizzo*, 2017 WL 3578701, at *16, the absence of treatment records from Plaintiff's individual therapy sessions prevented the ALJ from having a complete medical history of Plaintiff's mental health impairments before formulating his RFC.

The Commissioner argues that the existence and content of any additional records is unknown, and, regardless of their existence, Plaintiff should have made attempts to request additional records sooner as the ALJ was unaware of their existence prior to him issuing his decision. ECF No. 19-1, at 14-15. The Commissioner's argument is not persuasive. It is well-established in this Circuit that an ALJ has an affirmative duty to develop the record even when the claimant is represented by counsel. *See Rosa*, 168 F.3d at 79. Additionally, while it is true that the ALJ does not need to develop the record further unless the record contains obvious gaps, the courts of this Circuit have repeatedly held that an ALJ has a heightened duty to develop the record when a claimant is alleging mental illness. *See e.g., Urquhart v. Berryhill*, 6:16-cv-06810-MAT, 2018 WL 6694928, at *2 (W.D.N.Y. Dec. 19, 2018) ("[A]n ALJ's obligation to develop the record cannot be relieved even when plaintiff's counsel fails to note additional records are needed at the hearing level." (internal citations omitted); *Gabrielsen v. Colvin*, No. 12-CV-5694 (KMK)(PED), 2015 WL 4597548, at *4 (S.D.N.Y. July 30, 2015) ("[A]n ALJ has a heightened duty to develop the record when a claimant asserts a mental impairment.") (internal citations omitted); *Corporan v. Comm'r of Soc. Sec.*, No. 12–CV–6704 (IPO), 2015 WL 321832, at *22 (S.D.N.Y. Jan. 23, 2015) ("The ALJ's duty to develop the record is enhanced when the disability in question is a psychiatric impairment.").

In addition to the gap created by the absence of treatment notes from Horizon, the ALJ should have sought additional, potentially relevant, medical expert opinion from Plaintiff's treating providers whom she was regularly seeing at Horizon because an ALJ has an "obligation to contact the claimant's treating physician in cases where the medical record is insufficient, conflicting, or unclear." *Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013).

In the absence of expert opinion from Plaintiff's treating physicians, the ALJ, in determining Plaintiff's RFC, relied on the opinions of Dr. Luna and Dr. Juriga, consultative examiners, rendered three years prior to his decision. The ALJ afforded great weight to these opinions because they were consistent with the record. Tr. at 27-28. The ALJ's reliance on the opinions of consultative examiners is problematic because Dr. Luna examined Plaintiff only once, while Dr. Juriga never examined Plaintiff in person. Tr. at 100, 448. The Second Circuit has cautioned ALJs not to rely heavily on the results from a single examination by a consultative physician in determining a claimant's RFC. *See Selian*, 708 F.3d at 419. A one-time consultative exam is potentially "a one-time snapshot of a claimant's status [and] may not be indicative of her longitudinal mental health." *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019). The ALJ's reliance on consultative examiners is also problematic because the record lacks treatment notes from Horizon for July 2015 through August 2017 and had the ALJ relied on the missing notes at the time of his decision, it is possible he might have reached a different RFC determination. Tr. at 449-519, 534-85; *Rosa*, 168 F.3d at 81. ("Had the ALJ pursued additional information from any or all of these sources, it is at least possible that the record would have included sufficient information to sustain plaintiff's claim of disability.").

Therefore, for the reasons set forth above, the Court finds that remand for further administrative proceedings is necessary so that the Commissioner can properly develop the record by obtaining the missing treatment notes from Horizon and obtain opinion from Plaintiff's treating mental health provider before formulating Plaintiff's RFC. Having found remand necessary, the Court need not and does not address Plaintiff's remaining arguments. *See Bell v. Colvin*, 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016).

.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (ECF No. 11) is GRANTED, the Commissioner's motion for judgment on the pleadings (ECF No. 19) is DENIED. This case is hereby REMANDED to the Commissioner for further proceedings consistent with this order. The Clerk of Court is directed to enter judgment and close the case.

**IT IS SO ORDERED.**

Dated: July 8, 2020
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court